**TRANS–STATE INVESTMENTS, INC.,**
**Appellant,**

v.

**Julio DEIVE, Appellee.**

**No. 4741.**

District of Columbia Court of Appeals.

Argued Oct. 21, 1969.

Decided Feb. 20, 1970.

Roger K. Zuker, Washington, D. C., with whom Murray A. Kivitz and Armand I. Robinson, Washington, D. C., were on the brief, for appellant.

Julio Deive entered an appearance, pro se.

Before KELLY, GALLAGHER and NEBEKER, Associate Judges.

KELLY, Associate Judge.

Appellant brought a breach of contract action in the trial court based on a written membership agreement signed March 1, 1967 by appellee Deive and a representative

of appellant's assignor,[1] Holiday Health of Washington, D. C., Inc. (Holiday). The agreement recited that Deive's membership in the "Holiday Physical Fitness and Recreation Program" entitled him to the use, where and to the extent available, of the following facilities and services: sun room, indoor swimming pool, gymnasium, steam room, showers, leisure lounge, individual programs, instructions on all equipment, and twenty massages. Deive agreed to pay a "regular massage" membership fee of $415.68 in twenty-four monthly installments.[2]

The trial court found that Deive never made use of Holiday's facilities or services and that several months after the contract date Deive notified appellant that he had been advised by a physician that he had a lung condition which would cause the use of Holiday's facilities to be dangerous to his health. Relying on Slenderella Systems, Inc. v. Greber, D.C.Mun.App., 163 A.2d 462 (1960), the trial court excused Deive from paying any part of the membership fee.[3]

In *Slenderella* we upheld the rescission[4] of a contract between the operator of a weight reducing salon and a woman who had been under a doctor's care for a back ailment. But Deive, unlike Slenderella's promisor, specifically agreed that "my failure to partake of the provided facilities and services for any reason will not release my obligation to pay all membership fees due." *Slenderella* can be further distinguished by the fact that there the plaintiffs were not only aware of the woman's back ailment at the time the contract was made but had actually advised her that her back condition would be benefited by the weight reducing treatments.

The statement of proceedings and evidence in this case states that on cross-examination Deive admitted that while his lung condition existed at the time, he never mentioned it or any other condition or illness when he signed the contract. A master index card, signed by Deive and received into evidence, reflects negative responses to six medical history questions indicating that he had never had high or low blood pressure, any sustained illness, any recent operations, any back trouble, any dizzy or fainting spells, or any limited range of motion at any specific joint. Holiday's representative testified that Deive was specifically asked if he claimed any medical disability or illness and Deive answered that he did not. If such disability or illness had been made known, the representative said, a medical release stipulation would have been signed providing that if a suitable program could not be worked out with the member's doctor and Holiday's medical director, the member would be released from the contract. Further, appellant's representative testified that as late as May, 1967 Deive still promised to pay the amounts due on the contract and it was not until September, 1967 that he mentioned his lung condition as an excuse for non-performance. At trial Deive admitted that he was fully capable of availing himself of six out of the nine services contracted for.

1. The contract was assigned to appellant without recourse on March 2, 1967.

2. The agreement further provided:
   I understand that the installment arrangement is made available merely as a matter of convenience [and] that all installments are payments toward the total membership fee * * *.
   If any payment is more than twenty days late, Holiday may, at its option, require full and immediate payment of the balance of my membership fee. If this matter is referred to an attorney for collection, I agree to pay an attorney's fee of ten per-cent (10%) of the balance then due.

3. The court also relied upon Stewart v. Loring. 5 Allen (Mass.) 306, 81 Am.Dec. 747 (1862) wherein it was held that a person who, through no fault of his own, became physically incapable *from subsequent ill health* of attending a gymnasium as a pupil, was excused from performance. Deive's testimony was that his lung condition existed at the time he signed the contract.

4. In this case Deive filed a handwritten answer, pro se, and did not counterclaim for rescission.

A contract cannot be rescinded for mistake or impossibility of performance if the inability to perform was foreseeable to or caused by the promisor and unknown to the promisee at the time the contract was made. Stern v. Ace Wrecking Company, Inc., D.C.Mun.App., 38 A.2d 626, 627 (1944). Moreover, by promising to pay the membership fee whether the facilities were used or not, Deive assumed the risk of any unforeseeable inability to perform. Cf. Transatlantic Financing Corporation v. United States, 124 U.S.App.D.C. 183, 363 F.2d 312 (1966); Slenderella Systems, Inc. v. Greber, *supra*.

Because appellee was not represented by counsel below and has made no argument on appeal, we have examined the record with particular care. However, even giving credence to his unsupported, hearsay testimony that a doctor told him that the use of Holiday's facilities would be dangerous to his health, we see no reason why Deive cannot be deemed to have breached the contract. Although he stated in his answer below that Holiday took advantage of his difficulty with the English language, he admitted that an interpreter-friend was with him when he signed the contract and explained the contract terms to him in his native tongue. He also admitted that he understood the contract provision containing the unconditional promise to pay the membership fee and that it was specifically explained to him at the time he signed the contract. Further, he stated that he operated his own business establishment and was familiar with business practices in the District of Columbia.

We hold the trial court erred in entering judgment for appellee.

Reversed with instructions to enter judgment for appellant.[5]

---

5. Appellee offered no evidence in mitigation of damages except for a $20 deposit on the contract, which sum should be allowed him. Cf. Bergman v. Bouligny, D.C.Mun.App., 82 A.2d 760 (1951); Amis v. Air Conditioning Training Co. of Youngstown, Ohio, D.C.Mun.App., 65 A.

2d 213 (1949); Westmount Country Club v. Kameny, 82 N.J.Super. 200, 197 A.2d 379 (1964). Appellant's testimony was that equipment must be installed in an operable condition, whether used by members or not, and that maintenance expenses continued regardless of use.